COPY

## SEARCH WARRANT

**STATE OF NEW YORK**                                    **MONROE COUNTY COURT**

**TO: ANY MEMBER OF THE NEWYORK STATE POLICE OR ANY POLICE OFFICER OF THE STATE OF NEW YORK, COUNTY OF MONROE, STATE OF NEW YORK, OR ANY MEMBER OF THE NYS OFFICE OF CANNABIS MANAGEMENT OR THE DEPARTMENT OF HOMELAND SECURITY.**

Proof, by affidavit, having been made this day made before me by Gia N. Paddock, an Investigator with the New York State Police assigned to the Special Investigation Unit, that there is probable cause for believing that the property described below may be found at the locations described below.

## YOU ARE AUTHORIZED AND DIRECTED TO SEARCH THE FOLLOWING:

The business/premises located at 1631 Dewey Ave, City of Rochester, County of Monroe, NY. The business/premises is located on the westside of Dewey Ave. The business/premises is described as a two-story building used as a retail store. The retail store front is brick in color with two glass doors. A sign reading "TRICLOMES" is displayed on the east side of the store.. The main entrance for the retail store is located on the north side of the business.

The areas to be searched being the entire premises described above, to include all its storage areas, locked boxes, safes.

*AND*

The business/premise located at 1635 Dewey Ave., City of Rochester, NY. The business/premises is located on the west side of Dewey Ave, west of "TRICLOMES". The business/premises is described as a four-story building brick in color with two glass doors at the front

1

entrance and three glass doors at the rear entrance. The entrance for the business is located on the northwest side of the building. This building is used for commercial use on the first floor, business being "Extreme Graphix Tattoo Shop (and/or Sniper Inc)." and the second floor being used as the primary residence for business owner, John P. Brown.

The areas to be searched being the entire premises described above, to include all its storage areas, locked boxes, safes.

*AND*

The entire vehicle described as a 2018 **Nissan Van** bearing New York **registration 24208NB.** This vehicle has been observed wrapped in different colors stating "GOT WEED". The vehicle is registered to John P. Brown and known to be used by him and his business to sell cannabis illegally out of.

*AND*

The entire vehicle described as a 2020 **Lincoln Navigator, color black, bearing New York registration HGB6730.** The vehicle is registered to John P. Brown and known to be used by him.

*AND*

The entire vehicle described as a 2020 **Dodge Durango, color white, bearing New York registration LBL2294.** The vehicle is registered to John P. Brown and known to be used by his son, Vlademir Brown.

*AND*

*Any vehicles associated with John Brown's criminal enterprise including Guardian's of Green security vehicles, (Tahoe- possibly 2019 Tahoe color black NY REG: KAP4002) /Unknown NY REG- Dodge Charger).*

*AND*

2

The entire vehicle described as a white 2011 Dodge Ram 3500 Pick up Truck, Wrapped truck in Sniper Inc., bearing New York registration 36748MC, Registered to John Brown. On 4/2/2024, Plate "36748MC" has been replaced by plate "94431ND".


*AND*


The entire vehicle described as a 2018 green Jeep Wrangler bearing New York registration 501PH, Registered to Yahaira Hine.


*AND*


The person of **John P. Brown**, date of birth 10/15/ 1970 a white male, approximately 5'6" feet tall, thin build, with brown hair.

*AND*


The person of **Valdemir P. Brown**, date of birth 07/26/2007 (16 years of age), a white male, approximately 5'9" feet tall, thin build, with brownish hair.

*AND*


The person of **Kurt C. Hine**, date of birth 08/07/1981, a Asian male, approximately 5'7" feet tall, thin build, with brown hair.

*AND*


The person of **Brian W. Gray**, date of birth 10/18/1972 ,a white male, approximately 5'7" feet tall, heavy build, with brown/ grey hair.

*AND*


The person of **Yahaira Hine**, date of birth 03/16/1980, a white female, approximately 4'10" feet tall, thin build, with brown hair.

*AND*


The person of **Luis A. Martinez**, date of birth 10/29/1966, a white male, approximately 5'9" feet tall, muscular build, with a shaved bald head.

*AND*


The person of **Andre T. Leno**, date of birth 11/08/1963, a white male,

3

approximately 5'4" feet tall, medium build, with brown hair.

*AND*

The person of **John I. Donahue**, date of birth 11/08/1963 , a white male, approximately 6'2" feet tall, thin build, with gray buzzed hair.

*AND*

The person of **Scott R. Ballou**, date of birth 03/12/1957, a white male, approximately 5'9" feet tall, medium build, with white hair.

*AND*

The person of **Andrew R. Smith**, date of birth 09/19/1983, a white male, approximately 5'10" feet tall, thin build, with brown hair.

*AND*

The person of **Carlos A. Ortiz**, date of birth 01/13/1989, a Hispanic male, approximately 5'6" feet tall, thin build, with brown hair.

## YOU ARE AUTHORIZED AND DIRECTED TO SEARCH AND SEIZE THE FOLLOWING PROPERTY:

Each of the listed items is of a kind or character described in CPL 690.10 – that is, each: (a) is stolen, or (b) is unlawfully possessed, or (c) has been used, or is possessed for the purpose of being used, to commit or conceal the commission of an offense, or (d) constitutes evidence or tends to demonstrate that an offense was committed or that a particular person participated in the commission of an offence of crimes described in New York State Penal Law Article 222 Criminal Sale of Cannabis, Article 222 Criminal Possession of Cannabis, Article 265 Criminal Possession of a Firearm, Article 470 Money Laundering, and to also include:

1. Paraphernalia and equipment for packaging Cannabis, Concentrated Cannabis and Cannabis-infused products.
2. Paraphernalia for weighing Cannabis, Concentrated Cannabis and Cannabis-infused products, including scales and balances.
3. Any Cannabis, Concentrated Cannabis or Cannabis-infused products which are possessed in violation of the Penal Laws of the State of New York.
4. Documents relating to the occupancy, residency and or ownership of the business and premises.

4

5. Written records, notes, books, ledgers, documents, photographs, or receipts pertaining to the sale or purchase of Cannabis, Concentrated Cannabis and Cannabis-infused products.

6. Written records, notes, documents or receipts pertaining to Bank accounts and Bank transactions related to the business.

7. U.S. Currency generated from illegal sale and/or distribution of Cannabis, Concentrated Cannabis and Cannabis-infused products, but not limited thereto, and any records, books, writings, photographs or receipts pertaining to any Cannabis transactions.

8. Safes or lock boxes which contain such records, paraphernalia, U.S. Currency, Cannabis, Concentrated Cannabis and Cannabis-infused products which may be locked and cannot be readily opened at the premises.

9. Address or telephone books, photographs, or telephone records that may identify other persons or businesses with whom a financial relationship, illicit or otherwise exists.

10. Electronic surveillance equipment to include cameras, microphones and associated recording and storage devices.

11. Electronic media for the entry/storage/retrieval or the transfer of information to computers and peripheral equipment, external/internal hard drives, telephone answering machines, cellular telephones (and chargers), electronic notebooks, mass storage devices to include portable external hard drives, flash drives, thumb drives, memory cards and CD-R/DVD discs.

12. Vehicles used in the transporting of Cannabis, Concentrated Cannabis and Cannabis-infused products for the purpose of selling.

13. Any illegally possessed firearms, ammunition, and high-capacity ammunition feeding devices.

And;

14. Authorize the search, seizure and forensic examination of any computers and peripheral equipment, external/internal hard drives, telephone answering machines, cellular telephones (and chargers), electronic notebooks, mass storage devices to include: flash drives, thumb drives, memory cards and CD-R/DVD discs seized in conjunction with the execution of these search warrants;

This Court hereby specifically determines that adequate grounds exist for authorizing the search to be made anytime of the day or night, and the Court so directs, pursuant to Section 690.35 sub. (4)(a), of the New York State Criminal Procedure Law.

You are hereby authorized to execute this search warrant pursuant to section 690.50 sub. 3 of the New York State Criminal Procedure Law, and this Warrant must be executed not more than ten days after the date of its issuance, and any property seized pursuant hereto shall be returned and delivered to the Court without unnecessary delay.

This search warrant issued this 27th day of June, 2024

       Honorable Vincent M. Dinolfo

       Monroe County Supreme Court Judge

_____

Signature of Judge/Justice and Title

6



# NEW YORK STATE ENFORCEMENT AUTHORITIES

## OVERVIEW

Governor Kathy Hochul recently unveiled new initiatives to shut down illicit cannabis operations and protect the legal marketplace as part of the FY25 enacted budget. The plan provides the Office of Cannabis Management and local municipalities with enhanced authority to take action against illicit cannabis storefronts and those who enable them. The initiatives are the strongest set of policies enacted thus far to tackle the illicit cannabis marketplace in New York State. Below is more information about what this means for New Yorkers.

## HOW DOES THE FY25 BUDGET HELP OCM SHUT DOWN ILLICIT CANNABIS STOREFRONTS IN NEW YORK STATE?

### EXPANDED ENFORCEMENT POWERS FOR THE OFFICE OF CANNABIS MANAGEMENT

The Office is permitted to immediately padlock a business after an inspection if the inspection reveals the selling of illicit cannabis and an imminent threat to health and safety, if no part of the area to be sealed is used in part as a residence or is zoned for residential use, and the unlicensed activity is more than a de minimis part of the business activity.

The following circumstances permit immediate padlocking upon first inspection:
* Sale to minors,
* Products not tested or labeled according to New York Cannabis law,
* Unlicensed processing of cannabis,
* Violent conduct,
* The presence of unlawful firearms,
* Proximity to schools, houses of worship, public youth facilities, and/or
* Products leading to illness or hospitalization.

Unlicensed activity will be considered more than a "de minimis" part of the business by one or more of the following factors:
* Signs or symbols, indoors and out, advertising the sale of cannabis
* Advertising or other marketing content in connection with the unlicensed activity
* The volume of illicit cannabis products on site
* The variety of illicit cannabis products on site

Even if an imminent threat to health and safety is not present or an inspection reveals unlicensed sales are only a "de minimis" part of the business activity, the Office may share notices of violation (NOV) with other agencies, including SLA, Gaming, or DTF who may then take action in revoking any license the business has with their agency. The Office may padlock such business if it is found in violation of the Cannabis Law upon a subsequent inspection absent imminent threat or more than de minimis factors.

### ENHANCED PENALTIES FOR REMOVING OR DAMAGING A PADLOCK

Removing or mutilating the order to seal is punishable, on conviction, by a fine up to $5,000 or by a class B misdemeanor, or both.

Removing or damaging a padlock is a Class A misdemeanor, Obstructing Governmental Administration, a crime with a maximum sentence of up to a year in jail.

## EXPANDED AUTHORITY FOR COUNTIES AND CITIES

County and city governments are granted authority, similar to OCM's, to seal/padlock illicit cannabis businesses provided that they enact a local law consistent with the enabling statute that at a minimum:

- Ensures consistent enforcement and procedures to conduct inspections, hearings, and padlocking businesses that mirror OCM's.
- Designates a point of contact to coordinate with OCM to report on enforcement activities.
- Requires hearings in City or County courts within 3 days of emergency padlocking and a court decision within 4 days after the hearing, for locations that were padlocked at first inspection due to imminent threat to health and safety.

County and city governments can initiate emergency proceedings with orders to cease illicit activity against both businesses and landlords using Section 16-a of the Cannabis Law, upon 10 days' notice to OCM, with the option to collect penalties in those proceedings.

## ENHANCED PENALTIES FOR LANDLORDS OF ILLICIT CANNABIS BUSINESSES

Landlords who rent a business they know is at least customarily or habitually engaged in selling cannabis without a license will be subject to penalties increased to:

- Five times the rent from the time the landlord was notified of the violation, outside of NYC
- A fine of $50,000 for any landlord notified of the violation in NYC

## THE FOLLOWING IS A BROAD OVERVIEW ON HOW A COMPLAINT TO OCM ORIGINATES, IS VETTED AND PRIORITIZED, AND SUBSEQUENTLY RESOLVED BY OCM:

The public submits complaints of illicit cannabis shops at cannabis.ny.gov/report-an-incident

→

OCM communicates with designated city or county officials, as well as other state agencies, to determine who best to execute the investigation.

→

If a determination is made for OCM to initiate an investigation and the shop is seen threatening health and safety, OCM may immediately padlock the shop, seize illicit cannabis, and issue penalties and fines.

→

OCM will provide regular public updates on locations that have been padlocked.

## WHAT IS THE STATE'S ILLICIT CANNABIS ENFORCEMENT TASK FORCE?

The Task Force is a coordinated, state-wide inter-agency effort launched to shut down illegal cannabis businesses that threaten the public health and safety of consumers, the social equity efforts of OCM, and the sustainability of the legal market. The following stakeholders will be engaged in the effort and will work alongside our partners in local law enforcement and city and county government statewide.

- New York State Police
- Department of Taxation and Finance
- State Liquor Authority
- Department of Agriculture and Markets
- Department of State
- Department of Health
- Department of Labor
- Department of Motor Vehicles

- Department of Corrections and Community Supervision
- Department of Environmental Conservation
- Department of Financial Services
- Division of Homeland Security and Emergency Services
- Thruway Authority
- Office of General Services
- Office of Information Technology Services
- Workers Compensation Board

## TASKFORCE OBJECTIVES

- To close the doors of brick-and-mortar illicit cannabis operations through a sustained, coordinated effort

- To prevent the sale of illicit cannabis to underage buyers (under 21)

- To capture lost revenue and ensure illicit operators and the landlords who lease to them are held accountable for the negative impacts of their violation of State law

- To protect New Yorkers from the risk of consuming illicit cannabis products, and on the difference between legal and illicit retailers